**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Madison National Bank, Appellee,**

v.

**Morton A. BENDER, et al., Appellants.**

**Nos. 96–5126, 96–5137.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 2, 1997.

Decided Sept. 23, 1997.

Ross D. Cooper, Washington, DC, argued the cause for appellants, with whom Nelson Deckelbaum was on the briefs.

Sharon M. Murphy, Attorney, United States Department of Justice, Washington, DC, argued the cause for appellee, with whom Eric H. Holder, Jr., United States Attorney at the time the brief was filed, Frank W. Hunger, Assistant Attorney General, United States Department of Justice, J. Christopher Kohn, Director, Ruth A. Harvey, Attorney, and J. Scott Watson, Counsel, Federal Deposit Insurance Corporation, were on the brief for appellee.

Before: WALD, WILLIAMS and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

On October 27, 1994, the district court granted summary judgment to the Federal Deposit Insurance Corporation ("FDIC") in its action against Van Dorn Retail Management, Inc. ("Van Dorn Retail") to recover the amounts due on several promissory notes, including attorneys' fees of 15 percent of the outstanding balance as provided in the notes. *See FDIC v. Bender*, Civ. No. 93–0864 (D.D.C. Oct. 27, 1994). Similarly, on February 28, 1996, the district court granted summary judgment to the FDIC in its action against Morton Bender ("Bender") as guarantor of the loan to Van Dorn Retail, holding that Bender's opposition to the motion for summary judgment was untimely. *See FDIC v. Bender*, Civ. No. 93–0864 (D.D.C. Feb. 28, 1996). In this consolidated appeal, Van Dorn Retail now challenges the district court's refusal to reconsider its award of 15 percent attorneys' fees to the FDIC, and Bender challenges the district court's treatment of the FDIC's motion for summary judgment as conceded. We hold that the district court erred with respect to Van Dorn Retail, but not with respect to Bender, in granting summary judgment on the fee issue to the FDIC, but because these results run the risk of creating inconsistent obligations between Van Dorn Retail and Bender as guarantor, we remand both cases to the district court for renewed consideration.

## I. Background

On December 1, 1986, Morton Bender, on behalf of MAB Development, Inc., executed and delivered to Madison National Bank ("Madison") a promissory note in which MAB Development, Inc., promised to pay a principal amount of $1,700,000 plus interest. On or about December 4, 1986, this note was replaced with six separate notes from Morton Bender, Scott Bender, Kenneth Bender, Jeffrey Bender, Lisa Bender, and Jay Bender. Each maker promised to make quarterly payments until December 4, 1991, when the balance payable under the note would become due. On December 31, 1986, Morton Bender executed a personal guaranty of each of the six notes.

In addition, on December 1, 1989, Morton Bender executed and delivered to Madison a promissory note, of which he was sole maker, in which he promised to pay a principal amount of $2,000,000 plus interest by December 1, 1990. This additional note provided that should it go into default, Bender would be liable for attorneys' fees in the amount of 15 percent of the outstanding balance of principal and interest. On April 5, 1990, N Street Follies, a limited partnership of which Morton Bender was general partner, executed and delivered to Madison a promissory note in which it agreed to pay a principal amount of $2,500,000 plus interest by April 5, 1991. Morton Bender also executed a personal guaranty of this note, which, similar to the note on which Bender was sole maker, provided for attorneys' fees of 15 percent upon default.

Finally, on January 21, 1991, Morton Bender, acting as secretary of Van Dorn Retail, executed and delivered to Madison a promissory note in which Van Dorn Retail agreed to pay a principal amount of $2,500,000 plus interest on demand. This note, too, provided for attorneys' fees of 15 percent upon default.

On May 10, 1991, Madison was declared insolvent, and the FDIC was appointed as receiver pursuant to 12 U.S.C. § 1819. As such, it succeeded to all of Madison's rights under the promissory notes. When each of these promissory notes and guaranties went into default, the FDIC brought suit in district court on April 26, 1993, seeking judgment against the Benders and N Street Follies (collectively, the "Bender Defendants") and Van Dorn Retail for the amount due, costs, and, where applicable, the full 15 percent in attorneys' fees.

The FDIC moved for summary judgment on all of the notes on February 4, 1994. The Bender Defendants and Van Dorn Retail, who were represented by the same counsel, jointly opposed the motion, arguing, among other things, that the 15 percent attorneys'

fees requested in the FDIC's motion were "not only unreasonable, but clearly unconscionable" because, though based on the contractual rates provided for in the notes, they bore no relationship to the reasonable fees actually incurred. The district court granted the FDIC's motion on October 27, 1994, ruling that because the defendants "have not produced any evidence other than the mere allegation that the attorney's fees are unconscionable to combat plaintiff's motion for summary judgment[,] the court must grant plaintiff's motion for summary judgment."

The Bender Defendants (but not Van Dorn Retail, which had obtained separate counsel) filed a motion for reconsideration on November 8, 1994, citing *FDIC v. Hadid,* 947 F.2d 1153 (4th Cir.1991), as authority for the proposition that under District of Columbia law the court may hold an evidentiary hearing if there is a legitimate dispute as to the reasonableness of a contractual attorneys' fee provision. The court denied the motion on February 28, 1996, erroneously stating that the Bender Defendants had not sought reconsideration of the ruling on attorneys' fees. The Bender Defendants (this time joined by Van Dorn Retail) filed a motion for reconsideration of this ruling on March 13, 1996, pointing out that they had, in fact, sought reconsideration of the fee award in their earlier motion. The court, recognizing its error, granted the motion in favor of the Bender Defendants on April 17, 1996, and required the FDIC to submit a motion for attorneys' fees addressing the reasonableness of the 15-percent provision. However, it denied Van Dorn Retail any relief, noting that Van Dorn Retail had not filed a motion for reconsideration in November and thus could not ask the court to reconsider its February decision.

In the meantime, the FDIC had been granted leave on May 17, 1994, to amend its complaint to include a new count against Bender as guarantor of the loan to Van Dorn Retail, which provided for 15 percent attorneys' fees, as well as a count against Delburt Van Dorn, Marc Goodman, Cindy Van Dorn, John C. Richards, and Connie J. Richards

(the "Van Dorn Guarantors"), none of whom is a party to this appeal, as guarantors of the same loan. The FDIC subsequently moved for summary judgment on the amended complaint on November 10, 1994. The Van Dorn Guarantors filed an opposition to the motion on December 9, 1994, alleging that a material issue of fact existed with respect to the amount of attorneys' fees. The Bender Defendants[1] filed an opposition to the motion on December 19, 1994, which stated that the Bender Defendants joined the opposition of the Van Dorn Guarantors. This opposition was challenged by the FDIC as untimely filed. On February 28, 1996, the district court granted the FDIC's motion as to the Bender Defendants in its entirety, ruling that the opposition was filed beyond the time limit prescribed in Local Rule 108(b) and that the FDIC's motion was thereby conceded. As to the Van Dorn Guarantors, the district court granted the FDIC's motion with respect to the amount due on the notes but reserved judgment as to the amount of attorneys' fees, holding that because the Van Dorn Guarantors had challenged the reasonableness of the contractual provision in their opposition to the FDIC's motion for summary judgment, the court, pursuant to District law, would not enforce the 15-percent provision "absent a showing by plaintiff that the amount is reasonable." The Bender Defendants and Van Dorn Retail appeal from these rulings, both arguing that the district court erred in not affording them a similar opportunity to contest the 15-percent fee provision.

## II. Discussion

### A. *Van Dorn Retail's Appeal*

Although Van Dorn Retail has styled its appeal as a challenge to the district court's failure to extend to it the benefit of the reconsideration afforded the Bender Defendants on the fee issue, we believe that it is more properly considered as a direct challenge to the original grant of summary judgment in favor of the FDIC as to the 15 percent attorneys' fees provided in the note. Although Federal Rule of Appellate Proce-

---

**1.** The Bender Defendants have filed as a unit throughout this suit and on appeal despite the fact that Morton Bender is the only party of the group to whom the guaranty agreement pertains. We refer to the parties on appeal as "Morton Bender" or "Bender."

dure 4(a)(1) requires that appeals be taken within 30 days after the date of entry of the judgment appealed from, Federal Rule of Appellate Procedure 4(a)(4) provides that if any party files a timely motion under Rule 59, the time for appeal for all parties runs from the entry of the order disposing of the last such motion. The Bender Defendants filed two motions for reconsideration; the last, filed on March 13, 1996, was granted on April 17, 1996. Van Dorn Retail's appeal was filed on May 8, 1996, and thus may be considered a timely filed appeal from the initial grant of summary judgment. As a result, we do not need to reach Van Dorn Retail's challenge to the district court's denial of reconsideration.

 This court reviews *de novo* the district court's order granting the FDIC's motion for summary judgment. *Consumer Fed'n of Am. and Public Citizen v. U.S. Dep't of Health and Human Servs.*, 83 F.3d 1497, 1501 (D.C.Cir.1996). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The initial burden on both these determinations rests with the moving party, who must show initially the absence of a genuine issue concerning any material fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970), as well as her entitlement to judgment in her favor as a matter of law, *Bloomgarden v. Coyer*, 479 F.2d 201, 207 (D.C.Cir.1973). If the moving party complies with this requirement, the burden shifts to the opposing party, who must set forth, by affidavit or otherwise, "specific facts showing that there is a genuine issue for trial," FED.R.CIV.P. 56(e), or demonstrate that the moving party is not entitled to judgment as a matter of law in

order to defeat the motion. Our first task, then, is to ascertain whether a factual dispute existed as to any material issue. If we find there to be no controversy with regard to the material facts, we focus on whether the district court correctly applied the relevant law. *Painting and Drywall Work Preservation Fund, Inc. v. Dep't of Housing and Urban Development*, 936 F.2d 1300, 1302 (D.C.Cir. 1991).

 Because the promissory notes themselves provide, and the parties do not dispute, that their enforcement is to be governed by the law of the District of Columbia, we look to that law to determine how stipulated attorneys' fees provisions are to be interpreted and, thus, the nature of the burden each party must meet in a motion for summary judgment.[2] District law incorporates the "American Rule," under which each party bears his or her own attorneys' fees "unless a statute or a contract specifically provides for an award of such fees." *Cahn v. Antioch Univ.*, 482 A.2d 120, 132–33 (D.C. 1984) (quoting *Washburn v. Washburn*, 475 A.2d 410, 413 (D.C.1984)); *see also Nepera Chemical, Inc. v. Sea–Land Service, Inc.*, 794 F.2d 688, 695–96 (D.C.Cir.1986). Unlike some jurisdictions, which hold that a contractual provision for a fixed percentage to be paid as attorneys' fees is enforced according to its terms, *see, e.g., NationsBank v. Scott Farm*, 320 S.C. 299, 465 S.E.2d 98, 101 (1995), the D.C. Court of Appeals has long held, and this court has acknowledged, that in the District such provisions are sustained "only as an indemnity for the reasonable fees necessarily and properly paid or incurred," *United States v. Reed*, 31 A.2d 673, 675 (D.C. 1942); *see also Manchester Gardens, Inc. v. Great West Life Assur. Co.*, 205 F.2d 872, 878 (D.C.Cir.1953).[3] The amount of these fees is to be determined by the trial judge "on an individual basis." *Central Fidelity Bank v. McLellan*, 563 A.2d 358, 360 n. 6 (D.C.1989).

**2.** Although the district court's ruling was based on an opinion of the D.C. Court of Appeals, *Central Fidelity Bank v. McLellan*, 563 A.2d 358 (D.C.1989), we review *de novo* its determination of District law. *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

**3.** This is not the case, however, with respect to contingent fee agreements between a client and his or her attorney; contingent fee agreements in the District of Columbia are "entirely permissible as long as they meet certain requirements and are not invalid for any other [public policy] reason." *Chang v. Louis & Alexander, Inc.*, 645 A.2d 1110, 1116 (D.C.1994).

Although a court charged with the task of enforcing a contract that provides for attorneys' fees does not have the discretion to award no fees at all, it does retain the discretion to determine what constitutes a reasonable amount. *Id.* at 360.

■■ Included within the scope of this discretion is the nature and amount of proof necessary to determine reasonableness. As the D.C. Court of Appeals noted in *Reed*, "[t]he question of what constitutes a reasonable fee depends on the circumstances of each case. If the court deems it necessary, or if either party desires, testimony may be taken as to the nature of the services rendered, and the reasonable value thereof." *Reed*, 31 A.2d at 675–76. Subsequent cases interpreting *Reed* have read "testimony *may* be taken" (emphasis added) as permissive rather than hortatory and have taken pains to make clear that the trial judge decides what sort of proof, if any, is needed to determine what a reasonable fee would be in any individual case. *See, e.g., Nolan v. Nolan*, 568 A.2d 479, 490 (D.C.1990) ("Lest there be any uncertainty, we now make explicit that the trial court retains discretion to decide the nature of proof necessary to establish the facts affecting its decision as to the amount of fees to award."). Because a judge who has monitored the case from its inception is considered to be "an expert on the value of legal services," she can fix the amount of the fee without hearing any evidence at all. *Dew v. Simon*, 95 A.2d 482, 484 (D.C.Mun.App. 1953); *see also Tyler v. Dixson*, 57 A.2d 648, 649–50 (D.C.Mun.App.1948); *Williams Enterprises, Inc. v. Sherman R. Smoot Co.*, 938 F.2d 230, 237 (D.C.Cir.1991) (interpreting D.C. law).

■ With these principles in mind, we now consider whether the FDIC met its burden pursuant to Rule 56. The FDIC's legal memorandum accompanying its motion for summary judgment asserted that Van Dorn Retail had defaulted under the terms of the note and thus was liable for the amount due, plus interests, costs, and attorneys' fees pursuant to the provisions of the note. The motion was accompanied by an affidavit supporting the FDIC's claims of default. Van Dorn Retail contends in its argument before this court that because District law requires that only reasonable fees be awarded pursuant to such contractual provisions, the FDIC, in order to make out its case, was required to submit with its motion for summary judgment some evidence of what would constitute a reasonable fee in this case. We disagree. Such a requirement would be inconsistent with our prior reading of District law in *Columbia Plaza Corp. v. Security Nat'l Bank*, 676 F.2d 780 (D.C.Cir.1982), in which we held that absent a challenge to a stipulated fee provision, the terms of the contract governed. At issue in *Columbia Plaza* was a foreclosure on property that secured a number of promissory notes held by two banks, each of which provided for attorneys' fees of either 10 or 15 percent. The trial court, on a directed verdict, awarded attorneys' fees to the banks in accordance with the terms of the notes. The debtors challenged this ruling on appeal, claiming that the court erred by not inquiring into the reasonableness of the fee award. We rejected the debtors' contention as to the 10-percent notes—that the trial court, by treating the fee provision as conceded, had precluded them from challenging the reasonableness of the fees—by noting that the parties had stipulated before trial that the foreclosure deficiency included attorneys' fees pursuant to the terms of the note. *Id.* at 791. With respect to the 15-percent notes, we observed that before the banks presented the court with the amount of claimed interest and fees, the trial court asked the debtors whether they had any issue to present to the jury. *Id.* The debtors did not take advantage of that or any other opportunity to challenge the attorneys' fees provisions. Because the debtors did not challenge either of the attorneys' fees provisions, and because the trial court did not have "an independent duty to examine whether [the debtors] had entered into a favorable bargain," we held that the trial court properly awarded attorneys' fees pursuant to the terms of the notes. *Id.*

A similar analysis of D.C. law was conducted by the Fourth Circuit in *Hadid*. *Hadid* involved two promissory notes, each of which provided for attorneys' fees of 15 percent in the event litigation to collect was required.

The trial court, relying on our *Columbia Plaza* case, after finding that the 15 percent provision was the result of arm's-length bargaining, awarded the contractual amount on a motion for judgment notwithstanding the verdict. Hadid challenged the award on appeal, noting that the amount was unreasonable in light of the bank's affidavit that the actual fees incurred were considerably less than the amount granted. The Fourth Circuit, noting that, unlike the debtors in *Columbia Plaza*, Hadid had challenged the amount of the award before the trial court, remanded the case to the district court with instructions to award only reasonable attorneys' fees, not exceeding the contractual limit of 15 percent. *Hadid*, 947 F.2d at 1158. The court noted:

> [I]n the absence of a challenge to the fees' reasonableness, in which the actual fees are proved, the contractual provision would be enforced, much as a liquidated damage provision would be. When, however, as here, the reasonableness of the fees is challenged before the trial court and the proved actual fees amount to $99,861, an award of $272,035 in accordance with a 15% contractual provision amounts to a windfall, or even a penalty, that the District of Columbia courts will not permit.

*Id.*

■■ *Columbia Plaza* and *Hadid* both establish that absent a challenge to a stipulated fee provision, the trial court should award attorneys' fees in accordance with the terms of the contract. In effect, as the FDIC argued before this court, a contractual provision creates a rebuttable presumption that the stipulated amount is reasonable. If this provision goes completely unchallenged, the trial court may assume that the parties are in agreement as to the fee provision and award summary judgment to a moving creditor. Van Dorn Retail is therefore incorrect in its assertion that the FDIC was required to submit evidence of reasonableness with its motion for summary judgment, for until an opposition to that motion was received, the

district court could properly have assumed that the reasonableness of the contractual provisions would go unchallenged and thus awarded attorneys' fees in the amount of 15 percent.

■■ The adequacy of the FDIC's motion does not end our analysis, however. Before we can affirm the district court's grant of summary judgment, we must find that Van Dorn Retail did not establish the existence of a genuine issue of material fact and that the FDIC was entitled to judgment as a matter of law.

In its memorandum in opposition to the FDIC's motion for summary judgment, Van Dorn Retail claimed both that there were material facts in dispute and that the FDIC was not entitled to judgment as a matter of law. It went on to argue that the amounts sought as attorneys' fees "are not only unreasonable, but clearly unconscionable, since they are based on the contractual rates set forth in the notes, and in no wise constitute an indemnity for the reasonable fees necessarily and properly paid or incurred," citing *Hadid, Reed,* and *Central Fidelity* and attaching, as required by Local Rule 108(h),[4] a "Statement of Material Facts in Issue," which included "2. Whether the claimed attorneys [*sic*] fees are justified."

In granting the FDIC's motion, the district court held that the promissory notes "clearly and unambiguously" established the terms of the agreement as to attorneys' fees, which it was bound to enforce given that Van Dorn Retail failed to produce any evidence "other than the mere allegation that the attorney's fees are unconscionable." We find this appraisal of the record to be inaccurate. The district court, understandably, construed Van Dorn Retail's challenge as one attempting to present issues of fact. We believe, however, that despite the inclusion of its challenge to the fees in its Rule 108(h) statement, Van Dorn Retail's opposition is more properly read as a challenge to the FDIC's entitle-

---

**4.** Local Rule 108(h) provides, in pertinent part: "An opposition to [a summary judgment motion] shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement." D.D.C. R. 108(h).

ment to the stipulated fee amount as a matter of District law. In other words, even assuming that Van Dorn Retail conceded the factual matters alleged in the FDIC's motion—the existence of the notes, the occurrence of default, and the language of the fee provision—it is clear that it disputed the legal effect of the fee provision. If its opposition sufficed as a challenge to the stipulated fee, the district court was obliged under District law to award only reasonable fees, with reasonableness a determination to be made by the judge. *See Urban Masonry Corp. v. N & N Contractors, Inc.,* 676 A.2d 26, 34–35 (D.C.1996). Van Dorn Retail's challenge to the FDIC's entitlement to collect the full 15 percent in attorneys' fees thus represented a legal, rather than a factual, dispute.

The question thus remaining is whether Van Dorn Retail's inclusion of the fee issue in its Rule 108(h) statement and its identification of the relevant District law in its legal memorandum raised a challenge sufficient to warrant a conclusion that the FDIC was not entitled to 15 percent attorneys' fees as a matter of law without a determination that such an amount would be reasonable. We hold that the challenge was sufficient. By citing to *Hadid, Central Fidelity,* and *Reed,* the seminal District case on this issue, and by clearly setting forth in its legal memorandum the appropriate interpretation of the fee provision, Van Dorn Retail put the district court on notice that the controlling law required a determination of reasonableness. The district court's conclusion that Van Dorn Retail failed to discharge its burden under Rule 56 was therefore in error.

Given that Van Dorn Retail successfully challenged the contractual fee provision, it was incumbent upon the district court to award only a reasonable fee. Because under District case law, the trial judge has discretion as to the amount of proof, if any, needed to determine a reasonable fee, *see, e.g., Nolan,* 568 A.2d at 490, we could still uphold a 15-percent fee award if the record before us showed that the district court had awarded the fees on the basis of a finding that the 15-percent figure was reasonable. The district court's opinion shows that this was not the case. From the record before us, it is clear that the district court did not use the "lodestar" method[5] or, indeed, any other method to arrive at a conclusion that the 15-percent figure was reasonable. Rather, believing that Van Dorn Retail had not raised a sufficient challenge to the stipulated fee, the district court awarded the FDIC attorneys' fees pursuant to the provisions of the note. It did not hold that such an amount was reasonable, nor did it make any attempt to determine whether the amount that 15 percent represented in any way reflected the time and labor exerted by the FDIC's attorneys in litigating this case.[6]

---

5. The lodestar method, a common method for calculating the amount of attorneys' fee awards, involves multiplying the number of hours reasonably expended by a reasonable hourly rate. The former is determined by considering the total number of hours expended and disallowing unproductive time; the latter is determined by reference to the prevailing market rate in the relevant community. *Murray v. Weinberger,* 741 F.2d 1423, 1427 (D.C.Cir.1984); *see also Ginberg v. Tauber,* 678 A.2d 543, 552 (D.C.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 738, 136 L.Ed.2d 677 (1997).

6. The District has adopted a list of 12 factors to be considered by the trial judge in determining attorneys' fee awards. These include:

(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment by the attorney due to acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.

*Frazier v. Franklin Inv. Co., Inc.,* 468 A.2d 1338, 1341 n. 2 (D.C.1983). These factors are derived

We therefore conclude that the lower court misapplied District law and thus reverse its grant of summary judgment to the FDIC only with respect to the issue of the amount of attorneys' fees for which Van Dorn Retail is liable and remand to the district court with instructions to award only a reasonable attorneys' fee, not to exceed the 15-percent limit in the notes.[7]

### B. *Morton Bender's Appeal*

Although Bender attempted to challenge the 15-percent fee provision before the district court, he denied himself the opportunity to do so by the late filing of his opposition to the FDIC's motion for summary judgment. In the United States District Court for the District of Columbia, Rule 56 of the Federal Rules of Civil Procedure and other federal rules concerning the submission of motions are supplemented by Local Rule 108(b), which provides, in pertinent part, that in response to all motions:

> Within 11 days of the date of service or at such other time as the Court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion. If such a memorandum is not filed within the prescribed time, the Court may treat the motion as conceded.

D.D.C. R. 108(b). Like other local rules that contain time limits for submissions, the purpose of Rule 108(b) is to assist the district court in "maintain[ing] docket control and ... decid[ing] motions for summary judgment efficiently and effectively." *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C.Cir. 1996) (discussing Rule 108(h)). Rule 108(b) is a rule of "neutral applicability," *Geller v. Randi*, 40 F.3d 1300, 1304 (D.C.Cir.1994), applying to any and all oppositions to motions filed in the district court.

We review the district court's decision under Rule 108(b) to bar consideration of Bender's opposition only for abuse of discretion. *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C.Cir.1988), *cert. denied sub nom. Twist v. Thornburgh*, 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989). In claiming that the refusal of the district court to entertain his opposition was such an abuse, Bender argues that default is to be used only in extreme circumstances and is thus subject to certain procedural constraints, citing *Shepherd v. American Broadcasting Cos., Inc.*, 62 F.3d 1469, 1478 (D.C.Cir.1995), and *Shea v. Donohoe Constr. Co., Inc.*, 795 F.2d 1071 (D.C.Cir. 1986). He further notes that admission of the opposition would not have been prejudicial: the FDIC admitted that it would not have opposed an extension of time; the district court took over a year to issue a ruling on the motion; and the brief submitted raised no new issues.

Bender's reliance on *Shepherd* and *Shea* is misplaced. In both cases, we were concerned with a district court's inherent power to issue a default judgment as a sanction for misconduct—a power whose exercise avoids the textual constraints on rules, which, consequently, earns it more searching review: "When rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the inherent power fills the gap.... Here ... the court imposed a default judgment under its inherent power, which is not grounded in rule or statute and must be exercised with particular restraint." *Shepherd*, 62 F.3d at 1474, 1480. Bender's characterization of the district court's action as a sanction is thus unpersuasive.

Rather, the district court's action constituted a straightforward application of Rule 108(b), and we have yet to find that a district court's enforcement of this rule constituted an abuse of discretion. *See, e.g., Weil v. Seltzer*, 873 F.2d 1453, 1459 (D.C.Cir.1989) (appellant who failed to file response within

---

from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), a case concerning Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, but have been held by the D.C. Court of Appeals to apply to the assessment of attorneys' fees in general. *Frazier*, 468 A.2d at 1341 n. 2.

**7.** Of course, the district court is free to award the same amount if it is persuaded that such an amount represents a reasonable fee in this case.

time prescribed by Local Rule 108(b) "is deemed to have waived his opposition" to the motion and "may not now complain on appeal"); *Twist,* 854 F.2d at 1424–25 (noting that the letter of Rule .108(b) specifically provides the time limit within which an opposition should be filed).

This court's most recent consideration of the rule suggests that the discretion to enforce this rule lies wholly with the district court: "Where the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the rule." *Twelve John Does v. District of Columbia,* 117 F.3d 571, 577 (D.C.Cir.1997). The district court's decision in this case was clearly based on Bender's late filing:

> As the Bender defendants did not request, nor did this court grant, an extension of time in which to file an opposition, this opposition was untimely.... Thus, pursuant to Local Rule 108(b), this court shall treat plaintiff's motion as conceded in its entirety.

Any doubt that the district court was acting in response to Bender's late filing is resolved by the last sentence of footnote 3 of the memorandum opinion:

> Moreover, the pleading rules of this court shall not be plainly disregarded by litigants. It is incumbent upon all parties appearing before this court to read and follow these rules. This court will not tolerate an unjustified deviation.

Because Local Rule 108(b) provides for an exception to the 11-day limit only upon leave from the court ("[w]ithin 11 days of the date of service or at such other time as the Court may direct ...."), and because Bender did not seek such an extension of time, it was not an abuse of discretion for the district court, pursuant to Local Rule 108(b), to treat the FDIC's motion for summary judgment as conceded.

■ Nonetheless, we think that it would create an anomalous situation were we to enforce the 15-percent fee award against Bender as guarantor of the loan to Van Dorn Retail when we have vacated that award as to Van Dorn Retail itself. We are confident that the district court would welcome the opportunity to reconsider its disposition of Bender's opposition in light of its assessment of attorneys' fees against Van Dorn Retail, and, accordingly, we vacate the summary judgment against Bender and remand to the district court so that it can appropriately exercise its discretion as to both parties' claims.[8]

### III. CONCLUSION

We reverse the grant of summary judgment against Van Dorn Retail, vacate the grant of.summary judgment against Bender, and remand to the district court with directions to enter judgment against Van Dorn Retail for reasonable attorneys' fees not to exceed the contractual limit of 15 percent and for the district court to reconsider its refusal to permit Bender, as guarantor of the loan to Van Dorn Retail, to challenge the fee award in light of the outcome of any future proceedings concerning the award of fees against Van Dorn Retail.

*It is so ordered.*

---

**8.** With respect to the Bender Defendants, the district court has held upon reconsideration that it will require the FDIC to submit a motion for attorneys' fees that "specifically addresses the reasonableness of the fifteen percent provision." Given the congruence of the issues in this case, it would not be inappropriate for the district court to conduct proceedings with respect to Van Dorn Retail and/or Bender in the same manner.